IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Marvin Coleman, | ) | C/A No. 0:14-2697-RBH-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Carolyn W. Colvin, Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This social security matter is before the court for a Report and Recommendation pursuant to Local Civil Rule 83.VII.02 (D.S.C.). The plaintiff, Marvin Coleman, brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the defendant, Acting Commissioner of Social Security ("Commissioner"), denying his claims for Disability Insurance Benefits ("DIB"). Having carefully considered the parties' submissions and the applicable law, the court concludes that the Commissioner's decision should be affirmed.

## SOCIAL SECURITY DISABILITY GENERALLY

Under 42 U.S.C. § 423(d)(1)(A) and (d)(5), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); see also Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1973). The regulations require the ALJ to consider, in sequence:

(1)    whether the claimant is engaged in substantial gainful activity;

(2)    whether the claimant has a "severe" impairment;

(3)    whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;

(4)    whether the claimant can perform his past relevant work; and

(5)    whether the claimant's impairments prevent him from doing any other kind of work.

20 C.F.R. § 404.1520(a)(4).[1]  If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step.  Id.

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments.  Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner.  To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy.  42 U.S.C. § 423(d)(2)(A); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980).  The Commissioner may carry this burden by obtaining testimony from a vocational expert.  Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

---

[1] The court observes that effective August 24, 2012, ALJs may engage in an expedited process which permits the ALJs to bypass the fourth step of the sequential process under certain circumstances.  20 C.F.R. § 404.1520(h).



## ADMINISTRATIVE PROCEEDINGS

In August 2011, Coleman applied for DIB, alleging disability beginning February 15, 2011. Coleman's application was denied initially and upon reconsideration, and he requested a hearing before an administrative law judge ("ALJ"). A hearing was held on March 21, 2012, at which Coleman, who was represented by L. Franklin Hill, Esquire, appeared and testified. After hearing testimony from a vocational expert, the ALJ issued a decision on April 25, 2013 finding that Coleman was not disabled. (Tr. 14-28.)

Coleman was born in 1963 and was forty-seven years old on his alleged disability onset date. (Tr. 154.) He has an eighth-grade education and has past relevant work experience as a tree equipment machine operator. (Tr. 186, 195.) Coleman alleged disability due to diabetes, a heart murmur, high cholesterol, gout, thyroid disease, high blood pressure, and type 2 pancreatitis. (Tr. 194.)

In applying the five-step sequential process, the ALJ found that Coleman had not engaged in substantial gainful activity since February 15, 2011—the alleged onset date. The ALJ also determined that Coleman's background diabetic retinopathy, cataract, depression, and obesity were severe impairments. However, the ALJ found that Coleman did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings"). The ALJ further found that Coleman retained the residual functional capacity to

> perform a wide range of medium work as defined in 20 CFR 404.1567(c) as follows. The claimant is capable of performing a wide range of medium work that includes lifting and carrying up to 50 pounds occasionally and 25 pounds frequently as defined in Dictionary of Occupational Title (DOT) and the regulations. If someone can do medium work, it is opined that this person can also perform light and sedentary work



that are inclusive within this exertional level. The claimant has no limits for sitting in an eight-hour workday. He is capable of standing and/or walking for up to six hours in an eight-hour workday. He is capable of occasionally climbing ramps/stairs, crouching and stooping. He is to perform no crawling, no kneeling and no climbing of ladders/ropes/scaffolds. He is to have no exposure to extremes of hot or cold. He is to perform no work that would involve hazardous situations such as work at unprotected heights or work around dangerous machinery that may cause harm to self or others. He is to perform no commercial driving as part of a job. Secondary to depression and limited education, he retains the capacity to understand, remember and carry-out simple instructions and perform simple routine repetitive tasks as consistent with unskilled work. In the course of work and secondary to limited education, he is to have no required reading and writing as part of his job. He is to be subject to no mandated production quotas such as producing X product in X amount of time. The claimant is able to perform sustained work activity on a regular and continuous basis for eight hours per day, forty hours per week.

(Tr. 21.) The ALJ found that Coleman was unable to perform any past relevant work, but further found that, considering Coleman's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that Coleman could perform. Therefore, the ALJ found that Coleman was not disabled from February 15, 2011 through the date of her decision.

The Appeals Council denied Coleman's request for review on May 21, 2014, making the decision of the ALJ the final action of the Commissioner. (Tr. 1-3.) This action followed.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Myers



v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589. In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Id. Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence. Blalock, 483 F.2d at 775.

## ISSUES

Coleman raises the following issues for this judicial review:

I.      The ALJ erred in failing to properly evaluate whether Coleman's IQ scores and additional impairments met and/or equaled the criteria of Listing 12.05(C)[;]

II.     The ALJ fails to properly consider the opinion evidence[;]

III.    The ALJ failed to properly evaluate the credibility of the Plaintiff[;]

IV.     The vocational testimony is contradicted by the Dictionary of Occupational Titles. The vocational expert is required to explain this contradiction under SSR 00-4p.

(Pl.'s Br., ECF No. 16.)

## DISCUSSION

**A.    Listing 12.05 and Dr. John B. Bradley's Evaluation**

As an initial matter, the court observes that Coleman's allegations of error in issues one and two are interrelated and therefore the court addresses these issues together. Specifically, in his first

issue, Coleman argues that the ALJ erred in failing to evaluate whether he met Listing 12.05.[2]  In support of this argument, Coleman relies on a psychological evaluation performed on June 4, 2012 by Dr. John B. Bradley.  In his second issue, Coleman argues that the ALJ erred in evaluating Dr. Bradley's opinion and in determining that it was entitled to little weight.  For the reasons that follow, the court finds that Coleman has failed to demonstrate that the ALJ's evaluation of Dr. Bradley's opinion, including his rejection of Dr. Bradley's IQ assessment, was unsupported by substantial evidence or reached through an incorrect application of the law.  Therefore, the court further finds that Coleman has failed to demonstrate any error in the ALJ's Listings analysis.

Regardless of the source, the Commissioner will evaluate every medical opinion received. 20 C.F.R. § 404.1527(c).  In evaluating medical opinions, generally more weight is given to the opinions of an examining source than a non-examining one.  Id.  Additionally, more weight is generally given to opinions of treating sources than non-treating sources, such as consultative examiners.  Id.  Further, an ALJ generally considers the length and nature of the source's treatment relationship with the claimant, the supportability of the opinion, the opinion's consistency with the other evidence in the record, whether the source is a specialist, and any other factors that may support or contradict the opinion.  Id.

In this case, Coleman presented a one-time psychological evaluation performed on June 4, 2012 by Dr. John B. Bradley at Coleman's request.  This opinion contains some significant limitations.  Relevant here, Dr. Bradley stated that Coleman obtained the following scores on the Wechsler Adult Intelligence Scale - IV:

---

[2] The court observes that, at times, Coleman appears to refer interchangeably to Listing 12.05(B) and 12.05(C).  However, ultimately Coleman appears to argue that the ALJ should have evaluated both of these subsections of 12.05, and therefore the court will address both of them.



| | |
|---|---|
| Verbal Comprehension | 54 |
| Performance Reasoning | 50 |
| Working memory | 50 |
| Processing Speed | 50 |
| Full Scale IQ | 43 |

(Tr. 309.)  Further, in the psychological evaluation Dr. Bradley opined:

> Conclusions:  Mr. Coleman is a 48-year-old male whose intellectual ability was measured as being in the moderate range of mental retardation.  This is judged to be a reasonably valid measure of the client's ability.  He had some difficulty understanding and following simple directions and had some difficulty expressing his thoughts verbally.  He was able to communicate with the examiner using simple vocabulary.  He was reading words at the kindergarten level and computing at the kindergarten level.  His perceptual-motor abilities are below normal.  He displays numerous symptoms of depression.  He can meet his personal needs.  Mr. Coleman's work history consists primarily of manual labor, which he maintains he can no longer do because of health problems.  His intellectual and academic limitations will probably prevent him from obtaining other types of employment.

(Tr. 310.)  Coleman also points out that Dr. Bradley completed a mental residual functional capacity assessment for Coleman.  In this assessment, Dr. Bradley found that Coleman was markedly or moderately limited in his ability to perform many activities.  Dr. Bradley indicated that he defined moderately limited as being "off task" 25% of the time when performing mental activity and the form defined "off task" as an inability to perform the activity.  (Tr. 311-13.)

In evaluating these opinions, the ALJ found that in the first opinion, "Dr. Bradley used someone else's name within his report of the claimant's evaluation.  The use of someone else's name within his report, coupled with the extremely low intellectual and cognitive scores, without any previous guide of such scores in the record, the undersigned notes that this casts a shadow over Dr. Bradley's entire report and opinion."  (Tr. 23.)  The ALJ also stated that "the same is true" of the mental residual functional capacity assessment.  The ALJ observed that later mental health treatment



notes confirm the ALJ's decision and refute Dr. Bradley's evaluation and opinion.  Specifically, the

ALJ stated as follows:

> The claimant was doing better on his medication.  He did not drink alcohol, since two
> years prior.  He stopped when he got pancreatitis.  Regarding his mental status
> examination, he was alert and oriented.  His attention, concentration, and memory
> were intact.  His thought content, thought processes, and behavior were within
> normal limits.  He denied current suicidal thoughts.  The diagnosis was that of
> depressive disorder, a single episode, with a GAF of 66.  These mental health
> professionals did not venture close to the extraordinary exaggeration of Dr. Bradley
> regarding the claimant's mental limitations and extremely low intellectual and
> cognitive scores (Exhibits 12F and 13F).

(Tr. 24.)  The ALJ later observed that Coleman received unemployment benefits, which requires a

certification that Coleman was willing and able to work.  Finally, the ALJ found that

> the MER [Medical Evidence of Record] *REFUTES* Dr. Bradley's assessment of an
> IQ score of 43 for the claimant.  **The claimant worked for many years thru early
> 2011 in low-end semi-skilled employment, sustained 27-year marriage, which is
> commendable, raised his family, and has an active drivers' license.**  Therefore,
> this low IQ score is completely unsupported.  The RFC accommodates any limited
> educational issues.  The MER *REFUTES* Dr. Bradley's opinion that the claimant
> would be off-task 25% of a workday.  The opinion is afforded little weight as the
> opinion is not supported by the totality of the evidence and does not include
> significant medical progress notes.  The Administrative Law Judge is not bound by
> a one-time consultative [examination] (Exhibits 8F and 9F).

(Tr. 25) (all emphasis in original).

Coleman challenges the ALJ's evaluation of Dr. Bradley's opinion, first arguing that the

ALJ's own opinion contains similar typographical errors, such as referring to Coleman as "her" and

stating that his IQ was 45 instead of 43.  In addition to challenging the use of a typographical error

in the opinion as a basis to discount an opinion, Coleman argues that other evidence of record shows

generally that Coleman did not do well in school, that his reading level was 1.1, and that nothing in

the school records contradicts the finding of a moderate IQ.  Moreover, Coleman argues that the ALJ

accepted that Coleman is illiterate by limiting him to no required reading and writing as part of his job.  Coleman also argues that the ALJ's discounting of Dr. Bradley's mental residual functional capacity assessment by stating that "the same is true" is unclear.  Finally, Coleman asserts that the mental health records cited by the ALJ do not refute Dr. Bradley's opinion, as Dr. Bradley found also that Coleman was friendly, cooperative, alert, and oriented with a reasonably accurate memory.

Upon review of the ALJ's decision and the record, the court concludes that the ALJ's decision sufficiently reflects that he applied the relevant factors in evaluating Dr. Bradley's opinion and finds that Coleman has failed to demonstrate that the ALJ's decision to afford little weight to Dr. Bradley's opinion is unsupported by substantial evidence.  See 20 C.F.R. § 404.1527(c).  Moreover, although Coleman may point to selective evidence that may support Dr. Bradley's opinion, the court may not substitute its judgment for the Commissioner's and finds that the ALJ's conclusions are within the bounds of the substantial evidence standard.  See Craig, 76 F.3d at 589 (defining "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance" and stating that the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]"); Blalock, 483 F.2d at 775 (indicating that regardless of whether the court agrees or disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence).

In light of the court's determination that Coleman has failed to demonstrate any error in the evaluation of Dr. Bradley's opinion, Coleman similarly cannot demonstrate any harmful error at Step Three of the sequential analysis, as Dr. Bradley's opinion appears to be the sole evidence that



Coleman points to in support of his argument regarding Listing 12.05. At Step Three of the sequential analysis, the Commissioner must determine whether the claimant meets the criteria of one of the Listings and is therefore presumptively disabled. "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria." <u>Sullivan v. Zebley</u>, 493 U.S. 521, 530 (1990) (emphasis added). It is not enough that the impairments have the diagnosis of a listed impairment; the claimant must also meet the criteria found in the Listing of that impairment. 20 C.F.R. § 404.1525(d). The Commissioner compares the symptoms, signs, and laboratory findings of the impairment, as shown in the medical evidence, with the medical criteria for the listed impairment. 20 C.F.R. § 404.1508. The Commissioner can also determine that the claimant's impairments are medically equivalent to a Listing, which occurs when an impairment is at least equal in severity and duration to the criteria of a Listing. 20 C.F.R. § 404.1526(a).

As indicated above, Coleman argues that the ALJ erred in failing to evaluate Listing 12.05(B) or (C) for Mental Retardation. That Listing, as of the date of the ALJ's decision, provided:

> 12.05 Mental Retardation:[3] Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> . . . .
>
> B.    A valid verbal, performance, or full scale IQ of 59 or less;

---

[3] The court notes that effective September 3, 2013—subsequent to the date of the ALJ's decision—the Social Security Administration replaced the term "Mental Retardation" with "Intellectual Disability" in Listing 12.05. <u>See</u> Change in Terminology: "Mental Retardation" to "Intellectual Disability," 78 Fed. Reg. 46499-01 (Aug. 1, 2013). However, the substance of the Listing has not changed.



OR

C.      A valid verbal, performance, or full scale IQ of 60 through 70 and a physical
        or other mental impairment imposing an additional and significant work
        related limitation of function; . . . .

20 C.F.R. Pt. 404, Subpart P, App. 1, Listing 12.05.

The United States Court of Appeals for the Fourth Circuit has made clear that in determining whether a claimant meets Listing 12.05, the ALJ must first find that the claimant satisfies the introductory paragraph to the Listing by finding that he has "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested" before the age of 22. Hancock v. Astrue, 667 F.3d 470, 473 (4th Cir. 2012). Next, the Listing requires a claimant to satisfy one of four additional requirements, categorized in the Listing as Requirements A-D. Here, because the ALJ's opinion reveals that he rejected the IQ score reported by Dr. Bradley, which Coleman has failed to demonstrate was in error, Coleman cannot satisfy requirements B or C. Thus, even assuming without deciding that the ALJ erred in failing to address Listing 12.05, Coleman has not carried his burden to show how such an error harmed him. See Tanner v. Comm'r of Soc. Sec., 602 F. App'x 95, 101 (4th Cir. 2015) (finding, in spite of the ALJ's error, reversal not warranted where it was "highly unlikely, given the medical evidence of record, that a remand to the agency would change the Commissioner's finding of nondisability"); Bishop v. Comm'r of Soc. Sec., 583 F. App'x 65, 67 (4th Cir. 2014) (applying the harmless error doctrine in the social security context and stating that "even assuming Chenery is applicable, any error is reviewed under the harmless error doctrine. Thus, if the decision 'is overwhelmingly supported by the record though the agency's original opinion failed to marshal that support, then remanding is a waste of time' ") (quoting Spiva v. Astrue, 628 F.3d 346, 353 (7th Cir. 2010)).

**B.     Credibility**

Coleman next argues that the ALJ erred in evaluating his subjective complaints.    In evaluating subjective complaints, the United States Court of Appeals for the Fourth Circuit has stated that "the determination of whether a person is disabled by pain or other symptoms is a two-step process." Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996).  It appears that in this matter only the second step is at issue,[4] during which the ALJ must expressly consider "the intensity and persistence of the claimant's [symptom] and the extent to which it affects [his] ability to work." Id. In making these determinations, the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p. "[A]llegations concerning the intensity and persistence of pain or other symptoms may not be disregarded *solely* because they are not substantiated by objective medical evidence." Id. (emphasis added).  "This is not to say, however, that objective medical evidence and other objective evidence are not crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs [his] ability to work." Craig, 76 F.3d at 595.  A claimant's subjective complaints "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the [symptoms] the claimant alleges [he] suffers." Id.  The social security regulations inform

---

[4] The first step requires there to "be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." Craig, 76 F.3d at 594 (internal quotation omitted).



claimants that in evaluating subjective complaints, the Commissioner will consider the following

relevant factors:

(i)     Your daily activities;
(ii)    The location, duration, frequency, and intensity of your pain or other symptoms;
(iii)   Precipitating and aggravating factors;
(iv)    The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
(v)     Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
(vi)    Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
(vii)   Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3).

        In discounting Coleman's testimony as to his alleged disabling conditions, the ALJ discussed

both the medical and non-medical evidence.  Specifically, the ALJ observed that Coleman "sat

through a nearly hour[-long] hearing and he did rise briefly once, alleging that his leg was numb.

He did evidence tears.  He maintained eye contact, responded slowly, and appropriately to questions.

Although he was not articulate, he was coherent, with a low IQ and a flat affect.  He also

demonstrated good memory." (Tr. 24.) The ALJ noted that she carefully observed Coleman and that

"he was not in any obvious pain or discomfort during the course of the hearing.  In addition, the

claimant lacked the general physical appearance of a person who might have been experiencing

prolonged or severe pain."  (Id.)  The ALJ found that "[t]he record supports that the claimant has

depression secondary to not working, but this is not supportive of being a causal factor regarding

pain" and concluded that Coleman's "subjective pain complaints are not fully credible and the record

supports this inconsistency of subjective complaints versus objective findings on examination as



comprehensively discuss in the body of this decision. The objective findings on examination support

good motor strength, intact neurological findings and no evidence of atrophy." (Id.) The ALJ further

stated "[a]lthough the claimant's subjective complaints may have some merit, the totality of the

supporting medical evidence does not provide clinical correlation of his symptomology to the degree

of debility alleged with objective findings on examination. Consequently, there is no legally

supportable basis for disability and preclusion of all work activity as within the meaning of the

regulations." (Tr. 25.) The ALJ had previously summarized Coleman's medical records and stated

that she gave

> significant probative weight to the treatment notes and examinations of University
> Hospital, Dr. Bledsoe, Peachtree Medical Center, Sleep Institute of Augusta, Aiken
> Ophthalmology, and Edgefield Mental Health that all show good physical and mental
> examinations, good eye examinations, and that the claimant exaggerated his
> symptoms. These records also show that claimant was on unemployment benefits
> and thereby certifying that he was willing and able to work (Exhibits 2F-6F and
> 10F-14F).

(Id.) Finally, the ALJ stated as follows:

> In conclusion, the claimant's daily activities are not significantly limited. This is
> consistent with the limitations indicated by other evidence in this case. He could
> dress and groom. ***Although the claimant alleges certain visual deficits, he drives
> without apparent difficulty and in fact drove 30 miles one way to the hearing.***
> Moreover, by his own admission, he did not require special accommodations at
> home. After a thorough and longitudinal review of the record, the undersigned finds
> the claimant's subjective complaints and alleged limitations are not fully persuasive.
> The claimant retains the ability to perform work activities with the limitations set
> forth above. The description of the symptoms and limitations that the claimant has
> provided throughout the record and during the hearing has generally been
> inconsistent and unpersuasive. The undersigned must conclude, based upon a
> consideration of subjective allegations weighed against objective evidence and other
> relevant information bearing on the issue of credibility that the claimant exaggerated
> his physical complications and so such subjective allegations must be rejected as
> lacking credibility.

(Tr. 26) (emphasis in original).



Coleman challenges some of the reasons offered by the ALJ to discount his credibility. Specifically, he argues that the ALJ improperly engaged in "sit and squirm" jurisprudence and failed "to explain how daily activities of dressing, driving, and watching TV are inconsistent with Coleman's claims of disability." (Pl.'s Br. at 29, ECF No. 16 at 29.) Coleman also states that although the ALJ "insinuates that treatment notes show that the claimant exaggerated his symptoms," she "fails to point to any specific statements in those treatment notes where doctors indicate that Coleman was exaggerating." (Id. at 30.)

The court has carefully considered the parties' arguments and the record in this matter and finds that Coleman has failed to demonstrate that the ALJ's evaluation of Coleman's subjective complaints is unsupported by substantial evidence or controlled by an error of law. See Craig, 76 F.3d at 589 (defining "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance" and stating that the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]"); Blalock, 483 F.2d at 775 (indicating that regardless of whether the court agrees or disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence). As an initial matter, Coleman has failed to demonstrate that the ALJ failed to properly apply the relevant factors in evaluating his credibility. See 20 C.F.R. § 404.1529(c)(3). In fact, the ALJ's decision reflects that she carefully considered the requisite factors in evaluating Coleman's credibility throughout the decision. Even accepting Coleman's arguments as true, the court finds that his arguments do not render the ALJ's decision unsupported in light of all the reasons offered by the ALJ. Moreover, although Coleman argues that his activities do not establish that he



can perform full-time work, the court finds that Coleman has failed to demonstrate that the ALJ's finding that his activities of daily living were inconsistent with his subjective complaints is unsupported by substantial evidence.  See Johnson v. Barnhart, 434 F.3d 650, 658 (4th Cir. 2005) (noting that a claimant's routine activities, including reading, cooking, exercising, attending church, cleaning house, washing dishes, doing laundry, and visiting, were inconsistent with her complaints). Further, the court may not substitute its judgment for the Commissioner's and finds that the ALJ's conclusions are within the bounds of the substantial evidence standard.  See Craig, 76 F.3d at 595 (stating that a claimant's subjective complaints of pain itself or its severity "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the [symptoms] the claimant alleges she suffers"); see also Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1993) (per curiam) (finding that the ALJ may properly consider inconsistencies between a plaintiff's testimony and the other evidence of record in evaluating the credibility of the plaintiff's subjective complaints); Jones v. Callahan, 122 F.3d 1148, 1152 (8th Cir. 1997) (finding an ALJ did not err in considering evidence that a claimant exaggerated the severity of his symptoms as a factor in weighing a claimant's credibility).

## C.     Vocational Expert's Testimony

When the ALJ's sequential evaluation reaches Step Five, the Commissioner bears the burden of providing evidence that other work exists in significant numbers in the national economy that a claimant could perform.  Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002); 20 C.F.R. § 404.1560(c)(2).  As stated above, the Commissioner may carry this burden by obtaining testimony from a vocational expert.  Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).



The ALJ found that if Coleman retained the residual functional capacity to perform the full range of medium work, the Grids would direct a finding of "not disabled." (Tr. 27) (citing Rule 203.26). However, the ALJ observed that Coleman's ability to perform the full range of medium work had been impeded by additional limitations and therefore asked the vocational expert whether jobs existed in the national economy that a hypothetical individual with Coleman's residual functional capacity could perform to determine the extent to which these limitations eroded the unskilled medium occupational base. At the hearing, the ALJ presented the vocational expert with the following hypothetical:

> I'd like for you to assume a hypothetical individual of the same age, eighth-grade education, and work experience as the claimant with the following limitations. The individual is limited to medium work that includes lifting and carrying up to 50 pounds occasionally and 25 pound frequently as defined in the DOT and the regulations. If someone can do medium work, it is opined that this person can also perform light and sedentary work that are inclusive within this exertional level. There are no limitations for sitting in an eight-hour workday. Individual is capable of standing and/or walking for up to six hours in an eight-hour workday. Individual is capable of occasionally climbing ramps or stairs, crouching, and stooping. Individual is to perform no crawling, no kneeling; and no climbing of ladders, ropes, or scaffolds. In the course of work, individual is to have no exposure to extremes of hot or cold. Individual is to perform no work that would involve hazardous situations such as work at unprotected heights or work around dangerous machinery that could cause harm to himself or others. There is to be no commercial driving as part of the job. Individual retains the capacity to understand, remember, and carry out simple instructions and perform simple, routine, and repetitive tasks as consistent with unskilled work. There is to be no required reading and no required writing as part of the job. Lastly, individual is to be subjected to no mandated production quotas such as producing X product in X amount of time, realizing full well that every job requires some output in some fashion.

(Tr. 63-64.) The vocational expert responded that an individual with those limitations could not perform Coleman's past relevant work, but he testified that such an individual could perform the occupations of hand packager (Dictionary of Occupational Titles ("DOT") # 920.587-018), which



is medium, unskilled with an SVP of 2 and 1,500 jobs in South Carolina and 190,000 nationally; hospital cleaner (DOT # 323.687-010), which is medium, unskilled with an SVP of 2 and 1,000 jobs in South Carolina and 195,000 nationally; cleaner, housekeeping (DOT # 323.687-014), which is light, unskilled with an SVP of 2 and 1,100 jobs in South Carolina and 250,000 nationally; shipping/receiving weigher (DOT # 222.387-074), which is light, unskilled with an SVP of 2 and 1,120 jobs in South Carolina and 155,000 nationally; and sorter (DOT # 521.687-086), which is sedentary, unskilled with an SVP of 2 and 800 jobs in South Carolina and 135,000 nationally.  (Tr. 65-67.)  The hearing transcript reflects that the vocational expert attested that his testimony was based on his "knowledge, education, experience, training; and will be consistent with the DOT unless [he] tell [the ALJ] otherwise."  (Tr. 60.)  Further, the ALJ's decision reflects that she "determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles."  (Tr. 27.)  Therefore, the ALJ concluded that "considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy" and a finding of not disabled is appropriate. (Tr. 28.)

Coleman argues that the ALJ erred in relying on the vocational expert's testimony, arguing that it is contradicted by the Dictionary of Occupational Titles and that the ALJ failed to elicit an explanation for this contradiction.  First, Coleman argues that the sedentary job of sorter is irrelevant because "the Grids" dictate a finding of disability beginning at age 45 if Coleman is limited to sedentary work because he cannot read or write in English.  See 20 C.F.R. Pt. 404, Subpart P, App. 2, Rule 201.00(h)(1).  However, as pointed out by the Commissioner, the ALJ did not make a finding that Coleman could not read or write.  Further, the Commissioner points to a disability report where

Coleman indicated he could read and understand English and that he could write more than his name in English. (See Tr. 193.) Even assuming that the ALJ erred in relying on this occupation, Coleman has failed to demonstrate that relying on the other three occupations was in error. Coleman attempts to point out that Coleman's limitations on kneeling and stooping would preclude a medium level occupation and that the language level indicated by the DOT for the remaining positions would be precluded by Coleman's residual functional capacity. However, as indicated above, the vocational expert attested that he would identify any conflicts between the DOT and his testimony and he did not indicate any conflicts and, in fact, identified each of these occupations in response to the hypothetical question that included limitations on reading and writing as well as limitations on kneeling and stooping.

Contrary to Coleman's arguments, the court finds that Coleman has failed to demonstrate an "apparent conflict." Moreover, the court is unpersuaded by Coleman's attempts to now challenge the vocational expert's testimony and the ALJ's findings and point out possible conflicts when none was raised during the proceeding. See Thompson v. Astrue, No. 8:09-1968-JFA-BHH, 2010 WL 3880047, at *3 (D.S.C. Sept. 28, 2010) (agreeing with the magistrate judge that although the ALJ did not ask the vocational expert if there was a conflict between his testimony and the DOT, there was no evidence of a conflict and that the plaintiff could have cross-examined the VE on this issue if she had desired); Young v. Comm'r of Soc. Sec., Civ. No. 08-0474, 2009 WL 2827945, at *13 (W.D. La. Sept. 1, 2009) ("[C]laimants should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing.") (citing Carey v.



Apfel, 230 F.3d 131, 142 (5th Cir. 2000), and cases cited therein).  Thus, remand is not warranted on this ground.

## RECOMMENDATION

For the foregoing reasons, the court finds that Coleman has not shown that the Commissioner's decision was unsupported by substantial evidence or reached through application of an incorrect legal standard.  See Craig, 76 F.3d at 589; see also 42 U.S.C. § 405(g); Coffman, 829 F.2d at 517.  The court therefore recommends that the Commissioner's decision be affirmed.

Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

July 24, 2015
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).