UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | |
|---|---|
| Marvin Coleman, ) | Civil Action No.: 0:14-2697-RBH |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| Carolyn W. Colvin, Acting Commissioner ) | |
| of the Social Security Administration, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

Plaintiff Marvin Coleman seeks judicial review, pursuant to 42 U.S.C. § 405(g), of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying his claim for disability insurance benefits (DIB) under Title II of the Social Security Act (the Act). The matter is before the Court for review of the Report and Recommendation (R & R) of United States Magistrate Judge Paige J. Gossett, made in accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02(B)(2) for the District of South Carolina. *See* R & R, ECF No. 18. The Magistrate Judge recommends the Court affirm the Commissioner's decision. R & R at 1, 20.

**Factual Findings and Procedural History**

In August 2011, Plaintiff applied for DIB, alleging a disability onset date of February 15, 2011, due to diabetes, a heart murmur, high cholesterol, gout, thyroid disease, high blood pressure, and type 2 pancreatitis. Administrative Transcript (Tr.) at 194. The Commissioner denied his application initially and on reconsideration, so Plaintiff requested a hearing before the Administrative Law Judge (ALJ). The ALJ held a hearing on March 11, 2013, and issued an unfavorable decision on April 25, 2013 finding Plaintiff was not disabled from February 15, 2011 through the date of the decision. Tr. at 14-28. The Appeals Council denied the plaintiff's request for review, and the ALJ's findings became

the final decision of the Commissioner of Social Security. Plaintiff then appealed to this Court.

The ALJ's findings were as follows:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2015.

2. The claimant has not engaged in substantial gainful activity since February 15, 2011, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: Background diabetic retinopathy, cataract, depression, and obesity (20 CFR 404.1520(c)).

. . . .

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

. . . .

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a wide range of medium work as defined in 20 CFR 404.1567(c) as follows. The claimant is capable of performing a wide range of medium work that includes lifting and carrying up to 50 pounds occasionally and 25 pounds frequently as defined in Dictionary of Occupational Title (DOT) and the regulations. If someone can do medium work, it is opined that this person can also perform light and sedentary work that are inclusive within this exertional level. The claimant has no limits for sitting in an eight-hour workday. He is capable of standing and/or walking for up to six hours in an eight-hour workday. He is capable of occasionally climbing ramps/stairs, crouching and stooping. He is to perform no crawling, no kneeling and no climbing of ladders/ropes/scaffolds. He is to have no exposure to extremes of hot or cold. He is to perform no work that would involve hazardous situations such as work at unprotected heights or work around dangerous machinery that may cause harm to self or others. He is to perform no commercial

>    driving as part of a job. Secondary to depression and limited
>    education, he retains the capacity to understand, remember and
>    carry-out simple instructions and perform simple routine repetitive
>    tasks as consistent with unskilled work. In the course of work and
>    secondary to limited education, he is to have no required reading
>    and writing as part of his job. He is to be subject to no mandated
>    production quotas such as producing X product in X amount of time.
>    The claimant is able to perform sustained work activity on a regular
>    and continuous basis for eight hours per day, forty hours per week.
>
> . . . .
>
> 6.    The claimant is unable to perform any past relevant work (20
>       CFR 404.1565).
>
> . . . .
>
> 7.    The claimant was born on September 2, 1963 and was 47 years,
>       which is defined as a younger individual age 18-49, on the alleged
>       disability onset date (20 CFR 404.1563).
>
> 8.    The claimant has a marginal education and is able to communicate
>       in English (20 CFR 404.1564).
>
> 9.    Transferability of job skills is not material to the determination of
>       disability because using the Medical-Vocational Rules as a framework
>       supports a finding that the claimant is "not disabled," whether or not
>       the claimant has transferable job skills (See SSR 82-41 and 20 CFR
>       Part 404, Subpart P, Appendix 2).
>
> 10.   Considering the claimant's age, education, work experience, and
>       residual functional capacity, there are jobs that exist in significant
>       numbers in the national economy that the claimant can perform
>       (20 CFR 404.1569 and 404.1569(a)).
>
> . . . .
>
> 11.   The claimant has not been under a disability, as defined in the Social
>       Security Act, from February 15, 2011, through the date of this
>       decision (20 CFR 404.1520(g)).

Tr. at 16-28.

On July 2, 2014, Plaintiff filed a complaint seeking judicial review of the Commissioner's decision. Complaint, ECF No. 1. Both Plaintiff and the Commissioner filed briefs, ECF Nos. 16 and

3

18, and the Magistrate Judge issued her R & R on July 24, 2015, recommending that the Commissioner's decision be affirmed,  ECF No. 20.  Plaintiff filed objections on August 10, 2015.  Pl.'s Objs., ECF No. 21.  The Commissioner replied to the objections on August 27, 2015.  Def.'s Reply, ECF No. 23.

Plaintiff presents three issues to the Court, arguing the ALJ erred in (1) failing to properly evaluate the opinion evidence of consultative psychologist Dr. John B. Bradley, the IQ scores included in Dr. Bradley's report,  and Listing 12.05(C);  (2) evaluating Plaintiff's credibility, and (3) failing to obtain a reasonable explanation for conflicts between occupational evidence provided by the vocational expert ("VE") and information in the Dictionary of Occupational Titles ("DOT").

## **Standard of Review**

### I.     **Judicial Review of the Commissioner's Findings**

The federal judiciary has a limited role in the administrative scheme established by the Act, which provides the Commissioner's findings "shall be conclusive" if they are "supported by substantial evidence."  42 U.S.C. § 405(g).  "Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964).  Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

This statutorily mandated standard precludes a de novo review of the factual circumstances that substitutes the Court's findings for those of the Commissioner.  *Vitek v. Finch*, 438 F.2d 1157, 1157-58 (4th Cir. 1971); *Hicks v. Gardner*, 393 F.2d 299, 302 (4th Cir. 1968).  The Court must uphold the Commissioner's factual findings "if they are supported by substantial evidence and were reached through application of the correct legal standard."  *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir.

2012); *see also Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972) (stating that even if the Court disagrees with the Commissioner's decision, the Court must uphold the decision if substantial evidence supports it). This standard of review does not require, however, mechanical acceptance of the Commissioner's findings. *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). The Court "must not abdicate [its] responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner]'s findings, and that [her] conclusion is rational." *Vitek*, 438 F.2d at 1157-58.

## II.     The Court's Review of the Magistrate Judge's R & R

The Magistrate Judge makes only a recommendation to the Court. The Magistrate Judge's recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The Court must conduct a de novo review of those portions of the R & R to which specific objections are made, and it may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

The Court must engage in a de novo review of every portion of the Magistrate Judge's report to which objections have been filed. *Id.* However, the Court need not conduct a de novo review when a party makes only "general and conclusory objections that do not direct the [C]ourt to a specific error in the [M]agistrate [Judge]'s proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). In the absence of specific objections to the R & R, the Court reviews only for clear error, *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005), and the Court need not give any explanation for adopting the Magistrate Judge's recommendation. *Camby v. Davis*, 718 F.2d 198, 200 (4th Cir. 1983).

**Determination of Disability**

Under the Act, Plaintiff's eligibility for the benefits he is seeking hinges on whether he is under a "disability." 42 U.S.C. § 423(a). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A). The claimant bears the ultimate burden to prove disability. *Preston v. Heckler*, 769 F.2d 988, 991 n.\* (4th Cir. 1985). The claimant may establish a prima facie case of disability based solely upon medical evidence by demonstrating that his impairments meet or equal the medical criteria set forth in Appendix 1 of Subpart P of Part 404 of Title 20 of the Code of Federal Regulations. 20 C.F.R. §§ 404.1520(d) & 416.920(d).

If such a showing is not possible, a claimant may also establish a prima facie case of disability by proving he could not perform his customary occupation as the result of physical or mental impairments. *See Taylor v. Weinberger*, 512 F.2d 664, 666-68 (4th Cir. 1975). This approach is premised on the claimant's inability to resolve the question solely on medical considerations, and it is therefore necessary to consider the medical evidence in conjunction with certain vocational factors. 20 C.F.R. §§ 404.1560(a) & 416.960(a). These factors include the claimant's (1) residual functional capacity, (2) age, (3) education, (4) work experience, and (5) the existence of work "in significant numbers in the national economy" that the individual can perform. *Id.* §§ 404.1560(a), 404.1563, 404.1564, 404.1565, 404.1566, 416.960(a), 416.963, 416.964, 416.965, & 416.966. If an assessment of the claimant's residual functional capacity leads to the conclusion that he can no longer perform his previous work, it then becomes necessary to determine whether the claimant can perform some other type of work, taking into account remaining vocational factors. *Id.* §§ 404.1560(c)(1) & 416.960(c)(1).

Appendix 2 of Subpart P governs the interrelation between these vocational factors. Thus, according to the sequence of evaluation suggested by 20 C.F.R. §§ 404.1520 & 416.920, it must be determined (1) whether the claimant currently has gainful employment, (2) whether he suffers from a severe physical or mental impairment, (3) whether that impairment meets or equals the criteria of Appendix 1, (4) whether, if those criteria are met, the impairment prevents him from returning to previous work, and (5) whether the impairment prevents him from performing some other available work.

## Discussion

The Magistrate Judge recommends affirming the Commissioner's decision, concluding that substantial evidence supports the decision and that the ALJ committed no reversible legal error. R & R at 1, 16. First, the Magistrate Judge finds the ALJ properly weighed the consultative medical opinion of psychologist, Dr. Bradley. Second, the Magistrate Judge finds substantial evidence supports the ALJ's evaluation of Plaintiff's credibility. *Id.* at 10-13. Third, the Magistrate Judge finds that the claimant has not shown that the testimony of the VE was contradicted by the DOT.

The Court addresses Plaintiff's objections in turn.

### I.     Dr. Bradley's Opinion and Listing 12.05

Plaintiff argues that the ALJ erroneously accorded "little weight" to the opinion of Dr. Bradley and to the IQ scores found in his report and failed to consider Listing 12.05(C).

In this case, the plaintiff's application for benefits did not mention any alleged mental impairments. In a pre-hearing brief, his attorney alleged that "major depression" and "mental retardation" were severe impairments, but indicated that he was not claiming that the requirements of a listing were met. (Tr. 239-240) The plaintiff submitted to the ALJ the psychological evaluation of Dr. Bradley dated June 4, 2012. In his report, Dr. Bradley states that he administered the Wechsler Adult

7

Intelligence Test and found that the claimant's full scale IQ was 43, in the moderate mentally retarded range of intelligence. He also found that the claimant had major depressive disorder. (Exhibits 8F and 15F) He completed a Mental Residual Functional Capacity Assessment (Exhibit 9F) and found that the claimant would "be 'off task' 25% of the time when performing the mental activity." (Tr. 311) He found that the claimant was moderately limited in remembering locations and procedures and understanding short, simple instructions and that he was markedly limited in understanding and remembering detailed instructions. He also found that the claimant was markedly limited in carrying out detailed instructions and completing a workday without interruptions from psychologically based symptoms. He found that the claimant would be able to interact with the public, but that he was moderately limited in getting along with peers. He found that Coleman was moderately limited in the ability to respond appropriately to changes in the work setting and to be aware of normal hazards and markedly limited in the ability to travel in unfamiliar places and to set realistic goals.

The Magistrate Judge cites the proper standards in her Report for the evaluation of non-treating medical opinions.

> Regardless of the source, the Commissioner will evaluate every medical opinion received. 20 C.F.R. § 404.1527(c). In evaluating medical opinions, generally more weight is given to the opinions of an examining source than a non-examining one. *Id*. Additionally, more weight is generally given to opinions of treating sources than non-treating sources, such as consultative examiners. *Id*. Further, an ALJ generally considers the length and nature of the source's treatment relationship with the claimant, the supportability of the opinion, the opinion's consistency with the other evidence in the record, whether the source is a specialist, and any other factors that may support or contradict the opinion. *Id.*

R&R, p. 6.

The Court agrees with the Magistrate Judge's recommended finding that the substantial evidence supports the weight assigned by the ALJ to Dr. Bradley's opinion and her finding that the ALJ

8

applied the proper factors in discussing Dr. Bradley's opinion. In discussing Dr. Bradley's opinion in connection with determining the RFC, the ALJ addressed the proper factors. The first factor is the length and nature of the (treatment) relationship. The ALJ noted that Dr. Bradley was a consultative examiner who saw the plaintiff at the request of counsel on June 4, 2012. She also considered the supportability of the opinion and the consistency with other evidence as follows:

> Of note, Dr. Bradley used someone else's name[1] within his report of the claimant's evaluation. The use of someone else's name within his report, coupled with the extremely low intellectual and cognitive scores, without any previous guide of such scores in the record, the undersigned notes that this casts a shadow over Dr. Bradley's entire report and opinion . . . .
> On November 6, 2012 and December 11, 2012 mental health treatment notes from Edgefield Mental Health further confirmed the decision herein and refute Dr. Bradley's evaluation and opinion . . . Regarding his mental status examination, he was alert and oriented. His attention, concentration, and memory were intact. His thought content, thought processes, and behavior were within normal limits. He denied current suicidal thoughts. The diagnosis was that of **depressive disorder, a single episode, with a GAF of 66**. These mental health professionals did not venture close to the extraordinary exaggeration of Dr. Bradley regarding the claimant's mental limitations and extremely low intellectual and cognitive scores (Exhibits 12F and 13F).

(Tr. pp. 23-24)

The ALJ also observed the claimant at the hearing and noted: "He maintained eye contact, responded slowly, and appropriately to questions. Although he was not articulate, he was coherent, with a low IQ and a flat affect. He also demonstrated good memory." (Tr. 24) The ALJ gave "significant probative weight" to the treatment notes of Edgefield Mental Health as a treating provider. She also relied upon the fact that the claimant worked for many years in "low-end semi-skilled employment, sustained a 27-year marriage, which is commendable, raised his family, and has an active drivers' license." (Tr. 25)

---

[1] The last page of Dr. Bradley's report refers to "Mr. Melcher". (Tr. 310)

9

The ALJ implicitly recognized that Dr. Bradley was a specialist in stating that he saw the claimant for a psycholocial evaluation.

Therefore, the ALJ adequately discussed and applied the pertinent factors to Dr. Bradley's reports, and the substantial evidence supports her conclusion that his opinions should be given "little weight."

The Court must next determine whether any error by the ALJ in failing to specifically refer to Listing[2] 12.05 is harmless. Listing 12.05 regards mental retardation or intellectual disability. *See* R&R, pp. 10-11. The ALJ discussed at length Listing 12.04 (affective disorders) and Listing 12.06 (anxiety related disorders). This discussion included a detailed discussion of the "Paragraph B" criteria, which are impairment related functional limitations relevant to those listings.

In *Hancock v. Astrue*, 667 F.3d 470 (4th Cir. 2012), the Fourth Circuit found that Listing 12.05 requires a showing of three prongs: (1) deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22 (Prong 1); (2) Plaintiff establishes one of four additional requirements identified as Requirements A-D (Prong 2); and (3) Plaintiff establishes "a physical or other mental impairment imposing an additional and significant work-related limitation of function (Prong 3). *Id*. at 473. The court addressed the situation in which only one IQ score is before the ALJ. *Hancock* followed the Third, Fifth, Eighth, Tenth, and Eleventh Circuits in holding that "an ALJ has the discretion to assess the

---

[2]   The Commissioner's regulations include an extensive list of impairments known as "the Listings" which the agency considers disabling without the need to assess whether a claimant can perform any work. 20 C.F.R. part 404, subpart P, Appendix 1. The listed impairments are considered by the agency to be sufficiently severe to prevent all gainful activity. 20 C.F.R. Section 404.1525. "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). Plaintiff has the burden to establish that his impairment is disabling at Step 3. *See Bowen v. Yuckert*, 482 U.S. 137, 1`46 n. 5 (1987); *Aldridge v. Astrue*, 880 F.Supp.2d 695, 698 (E.D.N.C. 2012).

validity of an IQ test result and is not required to accept it even if it is the only such result in the record." *Id*. at 474. The court cited opinions from the other circuits as follows:

> *Lax v. Astrue*, 489 F.3d 1080, 1086–87 (10th Cir. 2007) (scores not accurate reflection of intellectual capabilities in light of other evidence); *Markle v. Barnhart*, 324 F.3d 182, 186 (3d Cir. 2003) (scores inconsistent with ability to care for oneself and perform activities of daily living); *Clark v. Apfel*, 141 F.3d 1253, 1256 (8th Cir. 1998) (scores derived from "first and only meeting" with examiner and were inconsistent with record of functional ability and prior medical record); *Muse v. Sullivan*, 925 F.2d 785, 789–90 (5th Cir. 1991) (per curiam) (scores inconsistent with job history, past medical records, and showing of good memory; claimant unable to see during examination); *Popp v. Heckler*, 779 F.2d 1497, 1499–1500 (11th Cir. 1986) (per curiam) (scores inconsistent with academic achievement; claimant trying to appear unfavorable).

*Id*.

The court also cited with approval another Eleventh Circuit case, *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992): "[A] valid I.Q. score need not be conclusive of mental retardation where the I.Q. score is inconsistent with other evidence in the record of the claimant's daily activities and behavior."

The ALJ in *Hancock* found no deficits in adaptive functioning and also found that no deficiency manifested itself before age 22. The Fourth Circuit stated that "[e]ither finding alone, if supported by substantial evidence, would be sufficient to support the conclusion that Hancock did not satisfy Prong 1." *Id*. at 475. The ALJ cited evidence that the claimant had worked at several jobs and "performed a variety of tasks which would be expected to be beyond the capacity of a mentally retarded person." *Id*. at 476. He also noted that Hancock was able to shop, pay bills, make change, care for her grandchildren, cook, bake, do puzzles, and attend school for a GED. The Fourth Circuit found that this evidence was sufficient to support the ALJ's finding that the claimant had no deficits in adaptive functioning.

11

Listing 12.05 does not define the term, adaptive functioning. The Social Security Administration's Program Operations Manual System (POMS) states that the phrase refers to "the individual's progress in acquiring mental, academic, social and personal skills as compared to other unimpaired individuals of his/her same age." POMS DI 24515.056(D)(2). "Adaptive activities" are described elsewhere in the Mental Disorders Listing as "cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for [one's] grooming and hygiene, using telephones and directories, and using a post office." 20 C.F.R. part 404, subpt. P, Appendix 1, Section 12.00(C)(1). Social functioning and limitations in concentration, persistence, or pace may also impact determination. *Id.*, Section 12.00(C)(2)-(3). "Deficits in adaptive functioning can include limitations in areas such as communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety." *Jackson v. Astrue*, 467 F. App'x 214, 218 (4th Cir. 2012), citing *Atkins v. Virginia*, 536 U.S. 304, 309 n. 3 (2002).

In the case at bar, as part of her analysis of mental health listings 12.04 and 12.06, the ALJ found "no evidence of loss of adaptive functioning." (Tr. 20) The ALJ found that the claimant has no restrictions in activities of daily living; that he is independent in personal care; and that he has a driver's license and drove 30 miles one way for the administrative hearing. The ALJ further found that he has only moderate difficulties with social functioning and concentration, persistence, or pace. She also referenced his testimony that he cannot read well but that he can understand the letters he receives from the Social Security Administration. In addition, she noted that the claimant received unemployment benefits, "thereby certifying that he was willing and able to work." (Tr. 25) Finally, the ALJ took into account the claimant's "depression and limited education" in the RFC and found that he could perform

12

"simple routine repetitive tasks as consistent with unskilled work" and 'he is to have no required reading and writing as part of his job." (Tr. 20) The Court finds that substantial evidence supports the findings of the ALJ that the claimant has no deficits in adaptive functioning. Based on the ALJ's findings regarding the lack of deficits in adaptive functioning, the plaintiff has not satisfied Prong 1 of Listing 12.05.

The Court agrees with the Magistrate's recommended finding that any error by the ALJ in failing to specifically address Listing 12.05(C) was harmless. The ALJ should identify relevant listed impairments and compare the listed criteria to the evidence of the claimant's symptoms. *Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). However, *Cook* does not establish "an inflexible rule requiring an exhaustive point-by-point discussion in all cases." *Russell v. Chater*, 60 F.3d 824, at *3 (4th Cir. 1995). *See also, Green v. Chater*, 64 F.3d 657 (4th Cir. 1995) (ALJ adequately explained his evaluation of the plaintiff's impairments even though he did not explicitly address why specific listings were not met.) Moreover, the Fourth Circuit has held (albeit in an unpublished decision) that it was not necessary to mention a specific listing where, reading the ALJ decision as a whole, "substantial evidence supports the finding at step three of the sequential evaluation process as the ALJ's analysis at subsequent steps of the evaluation are inconsistent with meeting (a listing)." *Smith v. Astrue*, 457 Fed. App'x 326, 328 (4th Cir. 2011). *See* also review of Fourth Circuit unpublished cases in *Ketcher v. Apfel*, 68 F.Supp.2d 629, 645-646 (D.Md. 1999).

**II.     Plaintiff's Credibility**

Plaintiff contends the ALJ erred in evaluating his credibility. Specifically, he asserts that the ALJ's comments about his pain were inconsistent and that the ALJ failed to explain how daily activities of dressing, driving, and watching television were inconsistent with his alleged disability.

Assessing a claimant's credibility involves a two-step process. *Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996) (citing 20 C.F.R. §§ 416.929(b) & 404.1529(b)). First, objective medical evidence must show the existence of a medical impairment that "could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant." *Id.* (internal quotation marks omitted). If the Commissioner determines the threshold step is satisfied, the Commissioner must evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects h[is] ability to work.[3] *Id.* at 595. The Commissioner's evaluation must account for not only Plaintiff's statements about his pain, but also for all available evidence, "including the claimant's medical history, medical signs, and laboratory findings . . . ; any objective medical evidence of pain . . . ; and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it." *Id.* (internal quotation marks and citations omitted). The Commissioner may not disregard or discredit Plaintiff's statements about pain solely because they are not substantiated by objective medical evidence. *Id.* Once a claimant meets the "threshold obligation of showing by objective medical evidence a condition reasonably likely to cause the pain claimed, [the claimant is] entitled to rely exclusively on subjective evidence to prove the second part of the test, *i.e.*, that his pain is so continuous and/or so severe that it prevents him from working a full eight hour day." *Hines v. Barnhart*, 453 F.3d 559, 565 (4th Cir. 2006). However,

> This is not to say . . . objective medical evidence and other objective

---

[3] The regulations set forth a framework for evaluating symptoms and prescribe seven factors for analyzing the claimant's credibility. 20 C.F.R. § 404.1529(c)(3). The Commissioner must consider the following factors: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) circumstances that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; (6) any measures other than treatment that the claimant uses or has used to relieve pain or other symptoms (e.g. lying flat on his back or standing for several minutes each hour); and (7) any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. *Id.*

14

> evidence are not crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs her ability to work. They most certainly are. Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers . . . .

*Craig*, 76 F.3d at 595. Under its scope of review, the Court cannot make credibility determinations but may review the ALJ's decision to determine whether substantial evidence supports the ALJ's credibility assessment. *Johnson v. Barnhart*, 434 F.3d 650, 658 (4th Cir. 2005). The ALJ's "decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p.

Here, the ALJ found that the claimant's "subjective pain complaints are not fully credible and the record supports this inconsistency of subjective complaints versus objective findings on examination as comprehensively discuss in the body of this decision. The objective findings on examination support good motor strength, intact neurological findings and no evidence of atrophy." (Tr. 24) As noted by the Magistrate Judge, the ALJ also found that "[a]lthough the claimant's subjective complaints may have some merit, the totality of the supporting medical evidence does not provide clinical correlation of his symptomology to the degree of debility alleged with objective findings on examination. Consequently, there is no legally supportable basis for disability and preclusion of all work activity as within the meaning of the regulations." (Tr. 25)

The Court agrees with the Magistrate Judge that the ALJ properly evaluated the plaintiff's credibility, and the record contains substantial evidence supporting the ALJ's credibility determination.

**III. Vocational Expert**

Finally, the plaintiff asserts that the ALJ failed to obtain a reasonable explanation for conflicts between occupational evidence provided by the vocational expert and information in the DOT. He acknowledges in his objections that there is probably no conflict between the job of housekeeping cleaner as described by the DOT and as described by the VE. However, he asserts that, because the other jobs listed by the VE did have conflicts not addressed by the VE, if the ALJ had properly addressed the conflicts relating to the other jobs, he might have concluded that the occupational base of work was substantially eroded, "as the DOT and other vocational evidence suggest the vast majority of occupations require some level of reading ability to be performed without accommodation." (Obj. p. 8) The Court adopts the analysis of the Magistrate Judge as to this argument. The vocational expert testified that he would identify any conflict between the DOT and the jobs that he identified, and he did not indicate any conflicts. The ALJ's hypothetical question to the VE included the limitation that jobs have "no required reading and no required writing as part of the job." (Tr. 64) The Court finds no error in the Magistrate's analysis on this issue.

## Conclusion

The Court has thoroughly reviewed the entire record as a whole, including the administrative transcript, the briefs, the Magistrate Judge's R & R, Plaintiff's objections to the R & R, and the applicable law. For the reasons set forth in the Court's order and the Magistrate Judge's R & R, the Court overrules Plaintiff's objections and adopts and incorporates by reference the R & R. The Commissioner's decision is **AFFIRMED**.

16

**IT IS SO ORDERED.**

Florence, South Carolina  s/ R. Bryan Harwell
September 15, 2015  R. Bryan Harwell
United States District Judge